UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| OUTDOOR LIFE NETWORK, LLC, a foreign limited liability company,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>　　　　vs.<br><br>EMTA CORPORATION, a Nevada corporation,<br><br>　　　　Defendant/Counter-Claimant. | 2:06-cv-00463  JWS<br><br>OPINION AND ORDER<br><br>[Re: Motion at Docket 17] |

## I.  MOTION PRESENTED

At docket 17 plaintiff Outdoor Life Network, LLC ("OLN") has moved for summary judgment on both the complaint and the counterclaim.  At docket 20 defendant EMTA Corporation ("EMTA") has opposed the motion, and at docket 26 OLN replied to EMTA's opposition.  Neither party has requested oral argument, and the court has determined that oral argument would not assist in deciding the motion at bar.

## II.  BACKGROUND

This action was removed to this court from the Arizona Superior Court, Maricopa County, under 28 U.S.C. § 1446.  There being complete diversity of citizenship between

the parties and an amount in controversy which exceeds $75,000.00, jurisdiction is conferred on this court by 28 U.S.C. § 1332(a).

The litigation revolves around a breach of contract claim in which OLN seeks to recover $300,000 from defendant. EMTA denies the existence of a contract, but it has also pled a counterclaim for rescission, in the event a contract is found to have been created. That claim is based on allegations that OLN misrepresented material facts which had EMTA known were false would have caused EMTA not to enter the contract.

By letter dated January 25, 2005, addressed to EMTA, OLN confirmed the elements of the OLN/XENTX deal for the first and second quarters of 2005 (hereinafter "Memorandum Agreement"). EMTA accepted the proposal on January 28, 2005.[1/] The terms of the Memorandum Agreement germane to the motion at bar were:

> Deal terms are as follows:
> Q1 2005 Total Net:             $105,000
> Q2 2005 Total Net:             $195,000
> Total Guaranteed HHIMPS (000): 35,760
> Guaranteed HHCPM:              $8.39
> Upfront Cash Commitment:       $60,000 (covers first 4 weeks)
> Cancellation Options:          Q1 2005 – 100% Firm
>                                Q2 2005 – 50% Cancellation options with written notice on or before 2/28/05 After 2/28 – Q2 2005 becomes 100% Firm.
>
>                 \* \* \* \*
>
> Next steps:
>
> - Print and sign a copy of this letter confirming the terms listed above and included in the flowchart and proposal presentation. Please fax a signed confirmation of this letter to 310.473 6525. Upon receipt – we'll secure the order in our inventory control system.

---

[1/] Motion for Summary Judgment, Exhibit 3 (doc. 16 at 23).

- E-mail a clean JPG logo file so that we can begin production on the menu board sponsorship element.
- Process the attached invoice for payment – to be received by OLN prior to the start of your ad flight.
- Send a VHS copy of your commercial creative for OLN review. Send to:
    Penny Kelly
    2 Stamford Plaza
    281 Tresser Boulevard
    Stamford, CT 06901

In accordance with the Memorandum Agreement, EMTA submitted to OLN: (1) A Credit Application, signed by EMTA's Vice President/Chief Financial Officer;[2] a clean JPG logo file;[3] and a video tape copy of EMTA's commercial creative.[4] It is undisputed that EMTA did not pay the $60,000 "upfront" money required by the Memorandum Agreement.

The fact that it did not receive the initial $60,000 payment notwithstanding, OLN commenced running the EMTA commercials on or about March 3, 2005. OLN ran and invoiced EMTA for commercials as follows: $60,000 for the period March 3 through March 27, 2005;[5] $60,000 for the period March 31 through April 24, 2005;[6] $75,000 for the period April 28 through May 29, 2005;[7] $60,000 for the period June 2 through

---

[2] *Id*, Exhibit 1 (doc. 16 at 14–15).

[3] *Id.*, Exhibit 2, Declaration of Penelope J. Kelly, ¶ 2 (doc. 16 at 18)

[4] Kelly Declaration, ¶ 3 (doc. 16 at 18).

[5] Kelly Declaration, ¶¶ 4, 5 (doc. 16 at 18).

[6] Kelly Declaration, ¶¶ 6, 7 (doc. 16 at 18).

[7] Kelly Declaration, ¶ ¶ 8, 9 (doc. 16 at 18).

June 26, 2005;[8/] $27,250 for the period June 30 to July 31, 2005;[9/] and $17,750 for the period August 4 through August 7, 2005.[10/] It is undisputed that EMTA neither paid the $300,000 in invoices nor protested the running of the commercials.

### III.  ISSUES PRESENTED

EMTA has pleaded as an affirmative defense the failure of a condition precedent, *i.e.*, that the payment of the $60,000 "upfront" money was a condition precedent, the failure of which precluded formation of a contract.  This raises two issues: (1) whether the $60,000 payment was a condition precedent to the formation of the contract or precedent to the duty of OLN to perform; and (2) if the latter, was the condition waived by OLN when it commenced to run the advertising?

OLN's motion for summary judgment on the counterclaim raises three issues which need to be decided : (1) lack of evidence of fraud or misrepresentation; (2) that the rescission was untimely; and (3) in any event, rescission is not available because EMTA can not return to OLN the consideration EMTA received, *i.e.*, the advertising that OLN furnished.

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the

---

[8/] Kelly Declaration, ¶¶ 10, 11 (doc. 16 at 19).

[9/] Kelly Declaration, ¶¶ 12, 13 (doc. 16 at 19).

[10/] Kelly Declaration, ¶¶ 14, 15 (doc. 16 at 19).

moving party is entitled to judgment in its favor as a matter of law.[11/]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant,[12/] depositions, answers to interrogatories, setting forth such facts as may be admissible in evidence.[13/]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[14/]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.  In order to show that a genuine issue of material fact exists, a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[15/]  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[16/]  There is no

---

[11/] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[12/] A declaration under penalty of perjury may be substituted for an affidavit. 28 U.S.C. § 1746.

[13/] FED. R. CIV. P. 56(e)

[14/] *Id*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[15/] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[16/] *Id* at 255.

genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[17]

## V.  DISCUSSION

Plaintiff has invoked the court's diversity jurisdiction, so the substantive law of the forum state provides the rule of decision,[18] including its choice of law rules.[19]  When interpreting state law, this court is bound by the decisions of the state's highest court.  In the absence of a decision by the highest state court, this court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[20]

Arizona courts apply the Restatement to determine the applicable law in contract actions.[21]  The agreement at issue in this case does not contain a choice of law provision, therefore, the state having the most significant relationship will provide the substantive law.[22]  The contacts to be considered include (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place

---

[17] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[18] *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 974 (9th Cir. 2002)

[19] *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).

[20] *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[21] *Cardon v. Cotton Lane Holdings, Inc.,* 841 P.2d 198, 202 (Ariz.1992).

[22] RESTATEMENT (SECOND) CONFLICT OF LAWS, § 188(2); *Aries v. Palmer Johnson Co.*, 735 P.2d 1373, 1381 (Ariz.App.1987).

of incorporation, and place of business of the parties, which are evaluated according to their relative importance with respect to the particular issue.[23] In applying these principles, in the absence of a constitutional or statutory directive, "the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."[24]

In this case, assuming the contract was made where it was accepted, the place of contracting is Arizona; the domicile of EMTA is Nevada, but its principal place of business of is in Arizona; the domicile of OLN is not shown, but it is not Arizona, and its principal place of business may be in Connecticut; the contract appears to have been negotiated either in Arizona or interstate; and the subject matter of contract and performance involved several states. In its complaint, OLN alleges that the obligations and transactions out of which its claims arise occurred in Arizona. Under the most significant contacts test, to the extent they are not neutral, the factors to be considered tip the scales in favor of the application of Arizona law. Therefore, the court holds that an Arizona court would apply its own law.

---

[23] *Id.*

[24] RESTATEMENT (SECOND) CONFLICT OF LAWS, § 6(2).

Under Arizona law, the interpretation of a contract is a matter of law to be determined by the court.[25] Where the language of a contract is clear and unambiguous, it must be given effect as written.[26] The court may resort to extrinsic evidence only when the writing is susceptible to the interpretation asserted by the party propounding the extrinsic evidence.[27]

"A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."[28] Arizona recognizes two forms of conditions precedent: a condition precedent to the formation of a contract and a condition precedent to the duty or obligation of a party to perform.[29] Also, under Arizona law conditions precedent are not favored and contract stipulations will not be construed as such unless required by the plain, unambiguous language or necessary implication.[30] Moreover, a condition precedent may be waived.[31]

The unfulfilled condition reads in two parts: "Upfront Cash Commitment: $60,000 (covers first 4 weeks)" and "Process the attached invoice for payment — to be received by OLN prior to the start of your ad flight." By its clear, unambiguous, and unmistakable

---

[25] *Hadley v. Southwest Prop., Inc.*, 570 P.2d 190, 193 (Ariz.1977).

[26] *Id.*

[27] *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz.2006).

[28] RESTATEMENT (SECOND) OF CONTRACTS, § 224.

[29] *Compare Ry-Tan Const. Inc. v. Washington Elementary Sch. Dist. No. 6*, 111 P.3d 1019, 1021–22 (Ariz.2005) (formal signing of a contract by a public entity a condition precedent to the formation of a contract) *with Am. Cont'l Life Ins. Co. v. Rainier Const. Co., Inc.*, 607 P.2d 372, 374–75 (Ariz.1980) (issuance of a certificate of completion a condition precedent to the duty to make final payment).

[30] *Angle v. Mario Builders, Inc.*, 626 P.2d 126, 129–30 (Ariz.1981).

[31] *Id.*, 626 P.2d at 131.

language the provision for the prepayment of $60,000 is susceptible to but a single interpretation: it is a condition precedent to the obligation of OLN to perform—not a condition precedent to the formation of the contract.[32/]  EMTA accepted the proposal creating a binding executory contract.  Under its terms, OLN was not obligated to commence performance prior to receiving the $60,000 "upfront" payment; a condition for its benefit alone, not the mutual benefit of both parties.[33/]  However, by commencing its performance prior to receiving payment OLN effectively waived the condition.  Once OLN commenced performance, absence some other defense, EMTA became obligated to pay for the advertising as agreed.[34/]

The court's inquiry does not end at this point.  In its counterclaim, EMTA asserts that OLN made several misrepresentations concerning the scope of its audience, upon which it relied and, if it had known of the misrepresentations, it would not have entered into the agreement.  Specifically: OLN falsely represented that it had the highest or second highest percentage of viewers among cable programmers who, within the past year, had purchased motor oil additives;[35/] and OLN omitted to disclose that OLN's programming was not shown over many of the major cable or satellite television

---

[32/] Because the court need not resort to extrinsic evidence to determine the existence of a contract, the affidavit of Edmond L. Lonergan, president of EMTA, as to his subjective belief that no contract existed and the uncommunicated lack of intention to enter a contract is disregarded.

[33/] *See Seppo v. First Nat'l Bank of Arizona*, 522 P.2d 562, 566 (Ariz.App.1974) (differentiating between conditions for the sole benefit of one party and conditions for the mutual benefit of both parties).

[34/] The court has considered the other arguments raised by EMTA related to the formation of the contract and finds them to be without merit.

[35/] Response to Statement of Facts, Affidavit of Edmond L. Lonergan, ¶ 9 (doc. 21 at 7).

providers in New York and Philadelphia.[36] According to EMTA, New York and Philadelphia were two of the four markets key to EMTA's advertising campaign.[37]

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witness.[38] Instead, it generally accepts as true statements made under oath.[39] A court is not bound to accept conclusory statements unsupported by the evidence,[40] nor may it draw unreasonable inferences from the record,[41] but it must nonetheless draw all reasonable inferences in favor of the non-moving party, and the moving party bears the burden of production and persuasion.[42] While there does not appear to be evidence that corroborates the somewhat conclusory statement that the representations made were false, OLN has produced no evidence that the statements were neither made nor false or, for that matter, any evidence whatsoever concerning the misrepresentation allegations.[43] Statements of counsel are

---

[36] Lonergan Affidavit, ¶ 11 (doc. 21 at 7).

[37] Lonergan Affidavit, ¶ 10 (doc. 21 at 7).

[38] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[39] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005); *See Williams v. Calderon,* 48 F.Supp.2d 979, 989 (C.D. Cal.1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom., Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).

[40] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990)

[41] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir. 1988).

[42] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).

[43] In its moving papers (Amended Motion at doc. 17, Statement of Facts at doc. 14, Reply at doc. 26, and Reply to Defendant's Statement of Facts at doc. 27), OLN refers to numerous exhibits that are not appended to any of them. Although they are not attached to the amended motion at docket 17, there are three exhibits attached to the identical motion filed at doc. 16. However, the moving papers in various places refer to exhibits four through twelve,
(continued...)

not evidence and may not be relied on to either support or defeat a motion for summary judgment.[44]

The court also rejects OLN's argument to the extent that OLN relies on the language of the Memorandum Agreement and the parol evidence rule as precluding a finding of fraud based upon extrinsic evidence. First, the Memorandum Agreement does not include an integration clause that indicates the agreement is based solely upon the representations in it. Second, the allegations of fraud do not contradict the express terms of the Memorandum Agreement. Most importantly, however, it is well settled under Arizona law that parol or extrinsic is always available to establish fraud in the inducement.[45]

The court agrees with OLN that generally under Arizona law rescission requires restoration of the parties to their *status quo ante* to the contract.[46] However, contrary to the arguments of OLN, that does not necessarily mean that EMTA must pay OLN $300,000. Under Arizona law this rule requires that a party seeking rescission restore or offer to restore that which the rescinding party has received under the contract.[47] As OLN correctly asserts, EMTA can not return the advertising that OLN provided; thus,

---

[43]/(...continued)
which are conspicuously absent. In addition, OLN requests the court take judicial notice of "MRI Doublebase 2004" attached to Exhibit Three. The court can find no "MRI Doublebase 2004" identified as pages "EMTA 0005 – EMTA 0007" attached to Exhibit Three filed with the court (attached to the Motion at doc. 16).

[44]/ *See Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) (*per curium*).

[45]/ *Lusk Corp. v. Burgess*, 332 P.2d 493, 495 (Ariz. 1958).

[46]/ *Jennings v. Lee*, 461 P.2d 161, 166 (Ariz. 1969).

[47]/ *Id.*, 461 P.2d at 165.

restoration of the "property" that EMTA received is impossible.  However, in substance what EMTA received under the Memorandum Agreement was not the advertising services themselves, but their value.  OLN contends that the value of the services was the amount invoiced—$300,000.  EMTA, on the other hand, contends that the value of the services was considerably less than $300,000, if it had any value at all.  In this case, since restoration of the *status quo ante* is impossible, the appropriate relief is to award rescissory damages in an amount as nearly as possible to the financial equivalent of rescission.[48/]

Likewise, the court rejects the other arguments raised by OLN.  Based on the record before it, the court cannot say that a rational trier of fact could not find that EMTA acted within a reasonable time after it learned of the fraud.  There is no evidence in the record that establishes (1) when EMTA learned of the alleged fraud or (2) that EMTA continued to accept OLN's advertising services after it learned of the alleged misrepresentations.  OLN has not carried its burden of establishing lack of a triable issue of material fact with on the counterclaim for rescission.

## VI.  CONCLUSION AND RULE 56 (d) FINDINGS

Based upon the foregoing, the motion at docket 17 is **DENIED**.

Pursuant to FED. R. CIV. P. 56(d), the court makes the following **FINDINGS OF FACT**:

---

[48/] *See Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 345 (Ariz.App.1996).  The court expresses no opinion as to the measure of those damages or the manner in which they are to be established.

1.  The requirement that EMTA pay $60,000 prior to the time OLN commenced running the advertisements was a condition precedent to the obligation of OLN to run the advertisements, which condition was waived by OLN.

2.  The Memorandum Agreement executed by EMTA on January 28, 2005, was a valid, binding contract between the parties;

3.  OLN ran advertising in accordance with the terms of the Memorandum Agreement for which it invoiced EMTA in the aggregate the sum of $300,000; and

4.  EMTA has not paid OLN any sum for the advertising provided by OLN.

DATED at Anchorage, Alaska, this 29th day of December 2006.

                                                  /s/
                                 JOHN W. SEDWICK
                    UNITED STATES DISTRICT JUDGE